# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:11CR0026-4 |
| v. ) | **OPINION** |
| ) | |
| **DAMON DOCK, JR.,** ) | By: James P. Jones |
| ) | United States District Judge |
| Defendant. ) | |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia for United States; Damon Dock, Jr., Pro Se Defendant.*

The defendant, Damon Dock, Jr. ("Dock"), proceeding pro se, filed a Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255. This matter is before me upon the United States' Motion to Dismiss, and Dock has responded, making the matter ripe for disposition. After reviewing the record, I will grant the United States' Motion to Dismiss and dismiss the Motion to Vacate, Set Aside, or Correct Sentence.

I.

Dock and five codefendants were charged in a multi-count Superseding Indictment. Count Two charged Dock with conspiracy to possess with the intent to distribute five kilograms or more of cocaine base, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). Dock pleaded not guilty and a jury found him guilty of Count

Two. On July 17, 2012, I sentenced Dock to 240 months imprisonment.[1] Dock appealed to the United States Court of Appeals for the Fourth Circuit, which affirmed his conviction. *United States v. Dock*, 541 F. App'x 242, 247 (4th Cir. 2013) (unpublished).

The evidence at trial was as follows. From the end of 2010 until May 2011, Dock's father, Damon Dock, Sr. ("Senior") distributed between 840 grams and 2.8 kilograms of cocaine base ("crack cocaine"). As payment, codefendant Chris Berry gave Senior stolen property that Senior's girlfriend, codefendant Hope Leonard, then sold. On multiple occasions during the conspiracy, Dock traveled with Senior and Leonard to meet Senior's drug supplier, Chris Avery, in Johnson City, Tennessee. They would then transport the crack cocaine to Senior's residences in Tennessee and Virginia.

At trial, Berry testified that he and his girlfriend, codefendant Amy Moser, obtained various amount of crack cocaine from Senior "almost on a daily basis" from the end of 2010 until May 2011. (Trial Tr. at 15, ECF No. 235.) Berry testified that Dock also transported crack cocaine he obtained from Avery to Senior's residences in Bristol, Tennessee, and Bristol, Virginia. (*Id.* at 23-24.)

---

[1] The Presentence Investigation Report ("PSR") recommended a total offense level of 34 and a criminal history category of II, with a guideline imprisonment range of 168 to 210 months. (PSR at 10, ECF No. 248). However, the minimum term of imprisonment for Count Two was 20 years; thus, the guideline term of imprisonment was 240 months. (*Id.*)

On May 19, 2011, Dock and codefendants Berry, Moser, Leonard, and Senior checked into a hotel in Bristol, Tennessee, and spent the day smoking crack cocaine. However, the United States Marshals Service had been conducting surveillance on the hotel room and had an arrest warrant for Berry. The officers identified Berry, entered the room, and arrested Dock, Berry, Moser, and Senior.[2] The officers found digital scales, drug paraphernalia, a Beretta handgun, prescription medication, and 5.7 grams of crack cocaine in the room.

In his § 2255 motion, Dock alleges that counsel provided ineffective assistance by failing to present exculpatory evidence at trial consisting of statements made by codefendant Avery to the government.

II.

To establish a claim of ineffective assistance of counsel, petitioner must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 671 (1984).[3] The first prong of *Strickland* requires a petitioner to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," meaning that counsel's representation fell below an objective standard of reasonableness. *Id*. at 687-88. Courts apply a strong presumption that counsel's performance was within the

---

[2] Senior had sent Leonard to deliver crack cocaine to one of his customers, and thus she was not present when the Marshals entered the room.

[3] If a petitioner has not satisfied one prong of the test, a court does not need to inquire whether he has satisfied the other prong. *Id.* at 697.

range of reasonable professional assistance. *Id*. at 689; *see also Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297-99 (4th Cir. 1992); *Hutchins v. Garrison*, 724 F.2d 1425, 1430-31 (4th Cir. 1983).

The second prong of *Strickland* requires a petitioner to show that counsel's deficient performance prejudiced him by demonstrating a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

### III.

Dock claims that counsel provided ineffective assistance by failing to present "exculpatory evidence in the form of *Brady* material." (Mem. in Supp. of Mot. to Vacate at 4, ECF No. 417-2.) In support, Dock states that codefendant Avery made certain exculpatory statements to the government during a debriefing and, pursuant to its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), the government then hand-delivered to counsel at trial a letter dated April 26, 2012 ("*Brady* letter") that stated, in pertinent part:

> Mr. Avery stated that [Dock] had never met him at a hotel in order to pick- up crack cocaine on behalf of [Senior]. Mr. Avery also stated that he had had little interaction with [Dock] until they were incarcerated.

(*Brady* Letter Ex. 1 to Mem. in Supp. of Mot. to Vacate, ECF No. 417-1.) Dock argues that this statement was a "dire[c]t contradiction of the testimonies made by

-4-

the prosecution[']s only witnesses against [him], namely, Amy Moser and Chris Berry."[4] (Mem. in Supp. of Mot. to Vacate at 4, ECF No. 417-2.)

Contrary to Dock's claims, counsel did attempt to present evidence regarding Avery's exculpatory statements. Counsel attempted to call Avery as a witness at trial and compel his testimony. (Trial Tr. at 16, ECF No. 344.) However, Avery had decided to invoke his Fifth Amendment right against self-incrimination if called to testify. (*Id.*) Counsel asked the court to compel Avery's testimony; however, the court denied counsel's request. (*Id.*)

In light of Avery's invocation of his Fifth Amendment right and resulting unavailability as a witness, Dock claims counsel should have attempted to introduce the *Brady* letter into evidence. *See United States v. MacCloskey*, 682 F.2d 468, 477 (4th Cir. 1982) ("The law is clear that a witness is unavailable under Rule 804(a)(1) when he invokes the Fifth Amendment privilege and the claim is sustained by the trial court.") However, this claim lacks merit because the letter was hearsay and Dock fails to present any hearsay exception under which the letter would have been admissible.[5] *See Sharpe v. Bell*, 593 F.3d 372, 383 (4th Cir. 2010) (the Sixth Amendment does not require counsel to raise a meritless

---

[4] At trial, Berry testified that Dock met Avery at a Motel Six, behind a Pizza Hut, and at a mall parking lot to pick up crack cocaine. (Trial Tr. at 23-24, ECF No. 235.)

[5] Instead, Dock argues that the *Brady* letter is not hearsay under Federal Rule of Evidence 801(d)(2)(B) and (C). (Reply to Mot. to Dismiss at 3, ECF No. 441.) However, this argument fails because the *Brady* letter would not have been "offered against an opposing party," as required by that rule.

argument). Hearsay is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence "to prove the truth of the matter asserted." Fed. R. Evid. 801(c).

Moreover, the *Brady* letter does not fall under any of the exceptions to the rule against hearsay that apply when the declarant is unavailable as a witness, as set out in Federal Rule of Evidence 804(b). The Supreme Court held in *Williamson v. United States,* 512 U.S. 594, 599, 604 (1994), that Rule 804(b)(3) allows only for the admission of the self-inculpatory portions of a hearsay statement.[6] "Rule 804(b)(3) is founded on the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true." *Id.* at 599. However, this justification underlying the hearsay exception does not extend

---

[6] Rule 804(b)(3) defines a statement against interest as:

A statement that:

> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and
>
> (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

to statements concerning the roles of other individuals in the alleged crime. *Id.* at 599-600. Therefore, Avery's declaration that Dock had never met him at a hotel to pick up crack cocaine could not have been admitted under Rule 804. Further, there is no evidence that Avery's statements in the *Brady* letter were "supported by corroborating circumstances that clearly indicate its trustworthiness" as required by Rule 804(b)(3)(B). *See United States v. Milikowsky*, 896 F. Supp. 1285, 1304 (D. Conn. 1994) (refusing to admit a *Brady* letter and noting that a rule that "with each *Brady* disclosure — particularly those for which no independent documentary evidence exists — prosecutors would, in effect, be stipulating to the introduction of that disclosure into evidence" which "might well dissuade prosecutors from erring on the side of liberal disclosure, to the ultimate detriment of criminal defendants"). Because Dock has not established that a motion to admit the *Brady* letter would have been successful, Dock has failed to plausibly allege deficient performance. *See Strickland*, 466 U.S. at 687-91. Furthermore, Dock has not shown prejudice because he has not shown that the *Brady* letter, if admitted into evidence, would have changed the outcome of his case. Accordingly, this claim will be dismissed.

IV.

For the foregoing reasons, I will grant the United States' Motion to Dismiss and dismiss the Motion to Vacate, Set Aside, or Correct Sentence. A separate Order will be entered herewith.

                DATED: July 27, 2015

                /s/ James P. Jones
                United States District Judge